UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

RAYMOND BONNER,

Plaintiff,

-v-

FEDERAL BUREAU OF INVESTIGATION *and*
CENTRAL INTELLIGENCE ANGENCY,

Defendants.

---

21 Civ. 2166 (PAE)

<u>ORDER</u>

PAUL A. ENGELMAYER, District Judge:

In this Freedom of Information Act ("FOIA") matter, a journalist seeks access to a notebook created by former Federal Bureau of Investigation ("FBI") agent Ali Soufan ("Soufan") and written summaries he prepared with another FBI agent relating to interviews they conducted at the U.S. military base at Guantanamo Bay, Cuba. The case is now on summary judgment, and fully briefed cross-motions for summary judgment are pending before the Court.

On July 5, 2023, to assist it in resolving those motions, the Court ordered the parties to file a joint letter detailing the remaining areas in dispute. Dkt. 64. The Court did so, in light of, *inter alia*, various concessions and agreements reached by the parties during the recent briefing. Specifically, the Court ordered the parties to file a joint letter detailing "(1) the remaining scope of the parties' dispute; (2) the produced documents that remain at issue in this litigation and which defendant controls these documents; (3) the present redactions to those documents; and (4) the exemption(s) applicable to each such redaction." *Id.* The Court instructed the parties to provide "the produced documents with only the redactions that remain at issue," with [e]ach redaction "accompanied by small text identifying the applicable exemption." *Id.*

The parties' joint-letter response of July 7, 2023—while responsive to some of the Court's directives—reports a major lapse by the defendant Central Intelligence Agency ("CIA"), one that impeded the parties' ability to more fully comply. *See* Dkt. 65. Specifically, the CIA reports that, in the process of responding to the Court's order to provide copies of the final produced versions that identify the exemption(s) applicable to each redaction, it "discovered that it had made an error in processing certain material." *Id.* at 3. "Specifically, during the CIA review of each document, its subject matter experts (who are not FOIA specialists) did not identify CIA-applicable exemptions for material that the FBI had already designated for redaction." *Id.* at 3. The CIA acknowledges that "[t]his was an error, for which the CIA sincerely apologizes" and that the agency "understands the significance of this mistake." *Id.*

The CIA's lapse is not only significant—it is alarming. In effect, the CIA is stating that it completely failed to carry out an independent FOIA review of its own as to portions of Soufan's notebook and the agents' interview summaries which the FBI had already designated as falling under certain FOIA exemptions. The CIA states that it has yet to examine whether these portions of the agents' writings fall under FOIA Exemptions 1 (covering matters of national security) and 3 (covering nondisclosure commands in other statutes). *See id.* It follows that, had the Court's July 5 order not awakened the CIA to this oversight, and had the Court found against the FBI as to portions of the agents' writings as to which the FBI claimed exemptions, these potentially highly sensitive and potentially FOIA exempt materials could have been released to plaintiff Raymond Bonner ("Bonner")—and beyond. The CIA, in fact, describes the materials at issue as "potentially classified and statutorily protected material." *Id.* Independent of the next steps in this case, the Court expects that the CIA will promptly conduct a searching internal review as to how this disquieting lapse occurred.

As to next steps in this litigation, the CIA proposes now to conduct a FOIA review of the items it has yet to analyze.  It seeks leave to submit a letter "proposing a schedule to complete this expedited review." *Id.*  In response, Bonner, skeptical of the CIA's bid "to add its own grounds for withholding to grounds previously asserted by the FBI," asks the Court instead to undertake *in camera* review of the notebook and interview summaries in question. *Id.*

Were a lapse of this nature occurring in the context of a civil discovery dispute, a court could reasonably find that the litigant had so thoroughly disregarded its obligations as having waived the right to resist its adversary's discovery demands. *See, e.g., In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, No. 21 Civ. 7504 (VSB), 2023 WL 3304287, at *5 (S.D.N.Y. May 8, 2023).  That option is not realistic here.  FOIA Exemptions 1 and 3 protect the national interest, including the interest in the nondisclosure of materials implicating national security (Exemption 1) or other statutorily protected interests (Exemption 3).  For that reason, Bonner's suggestion, that in lieu of review by the CIA, the Court undertake an *in camera* review of the withheld items, is not viable either.  The Court's *in camera* review would assure review by a neutral.  But it is no substitute for the CIA's seasoned and expert eye in assessing, in the context of other information known to the agency, whether particular portions of the agents' writings fall within these exemptions.

The Court accordingly has no choice but to give the CIA an opportunity to review the as-yet reviewed materials and to identify any which it assesses as falling within Exemptions 1 and 3.  However, to the extent CIA offers to propose its preferred schedule for such review, the answer is no.  The Court will set the schedule for the CIA's review with due attention to the interests of other stakeholders.  The CIA is to arrange its affairs to meet that schedule.  Although the Court is ordinarily solicitous of federal agencies' claims of competing demands on their time,

including in the context of FOIA actions, this is no ordinary situation. The CIA's lapse will require a degree of rebriefing of the pending summary judgment motions, will cause significant delay of the final resolution of summary judgment motions in this long-pending case, will impose extra work on plaintiff's counsel, and will inconvenience the Court, which had allocated the time of its soon-to-depart, security-cleared law clerk, who is familiar with this case, to address the summary judgment motions now. Most of all, the greater the delay caused by CIA's lapse, the greater the derogation of the interests served by FOIA, which contemplates—to the extent aspects of Soufan's notebook and the agent's interviews summaries may be held non-exempt—the timely disclosure of these materials.

The Court accordingly orders that—**by one month from today, that is, August 10, 2023**—the CIA fully complete its FOIA review and identify for the Court and plaintiff Bonner in writing, and with specificity, all aspects of the as-yet unreviewed material for which it asserts an exemption, so as to enable prompt briefing on any such claims. The Court further orders that **by Friday, July 14, 2023**, the parties propose an expedited schedule for supplemental briefing of summary judgment motions directed to the newly claimed exemptions.

*       *       *

The Court has two additional—more prosaic—orders in response to the parties' July 7 joint letter. The Court's fourth request in its July 5 order was not heeded in the joint letter. The Court had ordered the parties to supply the documents at issue with the exemption(s) applicable to each redaction identified. However, the documents at Docket 65, Exhibits A, B, and C, have unintelligible exemption numbers in the margins. These do not clearly correspond to any one redaction or any grouping of redactions on a particular page.

4

By **July 14, 2023**, the parties are to refile the documents in such a fashion that, for each redaction on each page, the corresponding presently asserted exemption(s) are clearly identified. Thus, if a page contains five redactions, there should be five margin notes identifying the corresponding claimed exemption(s).  The parties may, of course, address together redactions on a page that are covered by the same exemption by clearly indicating such.  This filing will assist the Court in its work, which will continue, towards resolving the presently claimed exemptions.

Relatedly, the Court orders the parties, also by **July 14, 2023**, to file an index that sorts the currently claimed redactions by exemption(s).  The index should state the number of redactions asserted under *only* Exemption 1; under *only* Exemption 3; under *both* Exemption 1 and 3; and so forth; and indicate where these redactions appear in the documents at issue (*e.g.*, "In the group of redactions under both Exemptions 1 and 3, one redaction is found on page 1 of Exhibit A, five redactions are found on page 2 of Exhibit B . . . .").

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: July 10, 2023
New York, New York