UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------

RAYMOND BONNER,

                                        Plaintiff,

                  -v-

FEDERAL BUREAU OF INVESTIGATION *and*
CENTRAL INTELLIGENCE AGENCY,

                                        Defendants.

21 Civ. 2166 (PAE)

OPINION & ORDER

------------------------------------------------------------

PAUL A. ENGELMAYER, District Judge:

Raymond Bonner ("Bonner"), a journalist, filed this Freedom of Information Act ("FOIA") action against the Central Intelligence Agency ("CIA") and the Federal Bureau of Investigation ("FBI" and, collectively with the CIA, the "Government" or the "agencies") seeking records related to the detention of Abu Zubaydah ("Zubaydah"), a Palestinian citizen detained in the wake of September 11, 2001 and still held today at Guantanamo Bay.

On August 9, 2023, the Court granted the Government's motion for summary judgment and denied Bonner's cross-motion. The Court held that FOIA Exemption 3 justified withholding information redacted by the Government in documents otherwise disclosed to Bonner concerning Zubaydah's detention and interrogation. Dkt. 69 ("August 9 Decision") at 23–24. Exemption 3 permits an agency to withhold information that is "specifically exempted from disclosure by statute," 5 U.S.C. § 552(b)(3), and the statute at issue, the National Security Act (the "NSA"), exempts from unauthorized disclosure "intelligence sources and methods,"
50 U.S.C. § 3024(i)(1). The Court found that the Government had adequately established through public and classified filings that the information it sought to withhold "would reasonably be expected to disclose, or lead to the disclosure of, intelligence sources and methods." August 9

Decision at 17. The Court further held that the Government had not waived this exemption's applicability through official disclosure. *Id.* at 17–23.

Although the August 9 Decision resolved most claims in this action, it left unresolved certain claimed exemptions, as a result of a "processing error" by the CIA that caused the agency not to consider whether independently to assert privilege under FOIA Exemptions 1 and 3 over certain redactions already claimed by the FBI. *See* Dkt. 65 at 3. Upon revelation of this error, the Court ordered the CIA expeditiously to review and brief any new claims of privilege. Dkt. 66. In the meantime, the Court issued its decision on summary judgment on the existing claims of privilege, stating that, "[t]o the extent that the CIA's expedited review makes additional claims of privilege, the Court will address these in a supplemental order." Dkt. 69 at 7 n.3.

On August 10, 2023, the CIA produced the results of its supplemental review, asserting 711 additional claims of privilege under Exemptions 1 and 3. *See* Dkt. 70, Ex. 1. In other words, as to 711 redactions already made by the FBI pursuant to claims of exemption, the CIA maintains that the information is independently exempt under FOIA Exemptions 1 and 3. *See* Dkt. 74 at 6. As to the more than 60 other redactions claimed by the FBI, however, the CIA did not assert its own claims of exemption, making the sole claims those by the FBI under Exemptions 6 and 7(C), to protect personal privacy of third parties, and/or Exemption 7(E), to protect specific, non-public FBI interview techniques. *Id.* at 9.

On August 22, 2023, Bonner filed a motion for reconsideration of the August 9 Decision. Dkt. 72 ("Bonner Mot."). On August 28, 2023, the Government filed, in support of the withholdings newly pursued by the CIA, a supplemental memorandum of law, Dkt. 74 ("Gov. Supp. Br."), public declarations from Assistant United States Attorney Christopher Connolly with attached exhibits, Dkt. 75 ("Connolly Decl."), and Mary C. Williams, Dkt. 76 ("Williams

Decl."), and a classified declaration submitted *ex parte* and *in camera, see* Dkt. 77. On September 8, 2023, the Government filed an opposition to Bonner's motion for reconsideration. Dkt. 80 ("Gov. Opp."). On September 11, 2023, Bonner filed a reply in support both of reconsideration and his cross-motion for summary judgment. Dkt. 81 ("Bonner Reply").

Pending now therefore are (1) Bonner's motion for reconsideration of the August 9 Decision; and (2) cross-motions for summary judgment as to the exemptions newly claimed by the CIA and the remaining FBI-only exemptions. For the reasons that follow, the Court denies Bonner's motion for reconsideration, grants the Government's motion for summary judgment in full, denies Bonner's cross-motion in full, and dismisses this action.

## I. Motion for Reconsideration

Bonner moves for reconsideration under Local Civil Rule 6.3. *See Fireman's Fund Ins. Co. v. Great Am. Ins. Co.*, 10 F. Supp. 3d 460, 475 (S.D.N.Y. 2014), *aff'd*, 822 F.3d 620 (2d Cir. 2016) (standards under Local Civil Rule 6.3 and Federal Rule of Civil Procedure 59(e) are identical). The Court assumes familiarity with the August 9 Decision and the underlying facts recounted therein.

### A. Applicable Legal Standards

The standard governing motions for reconsideration under Local Civil Rule 6.3 "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp. Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). Such a motion is "neither an occasion for repeating old arguments previously rejected nor an opportunity for making new arguments that could have previously been made." *Associated Press v. U.S. Dep't of Def.*, 395 F. Supp. 2d 17, 19 (S.D.N.Y. 2005). Accordingly, "[c]ourts have repeatedly warned parties that motions for reconsideration should

not be made reflexively in order to reargue those issues already considered when a party does not like the way the original motion was resolved." *Families for Freedom v. U.S. Customs & Border Prot.*, No. 10 Civ. 2705 (SAS), 2011 WL 4599592, at *7 (S.D.N.Y. Sept. 30, 2011) (citing *Makas v. Orlando*, No. 06 Civ. 14305 (DAB) (AJP), 2008 WL 2139131, at *1 (S.D.N.Y. May 19, 2008) (internal quotation marks and additional citation omitted)). Generally, district courts will amend or alter a judgment only "to correct a clear error of law or prevent manifest injustice." *In re Assicurazioni Generali, S.P.A.*, 592 F.3d 113, 120 (2d Cir. 2010) (internal quotation marks and citation omitted).

## B. Discussion

Bonner argues that reconsideration of the August 9 Decision is warranted for two reasons: (1) the CIA's supplemental assertions under Exemption 3 of information the FBI had previously claimed to be exempt only under personal privacy provisions call into question the Government's overall assertions under Exemption 3, including those accepted by the August 9 Decision; and (2) the Court erroneously failed to address *United States v. Zubaydah*, 142 S. Ct. 959 (2022), which, Bonner claims, construes the official disclosure doctrine more broadly than did this Court. Bonner Mot. at 2–8. Neither argument is persuasive.

### 1. Supplemental Assertions Do Not Undermine August 9 Decision

Bonner argues that the CIA's assertions that much information withheld under personal privacy exemptions is also properly withheld under Exemption 3 exposes a flaw in the Court's reasoning in accepting the agencies' Exemption 3 claims. The Court and the agencies, Bonner asserts, have conflated "raw intelligence" with information relating to intelligence sources and methods, whereas only the latter is properly withheld under Exemption 3 and the NSA. Bonner Mot. at 2–7.

4

This argument is only barely tethered to a new development: the CIA's supplemental assertions. And on its own terms, it fails to win Bonner relief, for reasons largely articulated in the August 9 Decision. Bonner is correct that the NSA does not exempt from disclosure all raw intelligence, regardless of whether the intelligence at issue tends to reveal "intelligence sources and methods." But the August 9 Decision nowhere thusly misconstrued the NSA. Nor did the Government in pursuing exemption.

On the contrary, it is Bonner who errs in broadly arguing that disclosing information provided from a known source cannot possibly lead to the disclosure of intelligence sources and methods. Bonner Mot. at 3. Depending on the context, it may well do so. Such is the case here. The Government's public and classified filings ably demonstrate the point. As the Government has stated in its public filings, "the precise contours of what Zubaydah did and did not tell the FBI agents who prepared the notebook and summaries [] not only 'constitute[s] intelligence in and of itself,' but also 'reveal[s] the sources and methods of the government's acquisition' of that particular intelligence." Gov. Opp. at 7 (quoting *ACLU v. U.S. Dep't of Def.*, 628 F.3d 612, 623 (D.C. Cir. 2011)). As the Government's filings reveal, the information redacted here, although constituting raw intelligence, also necessarily reveal Zubaydah as the (or a) source of that raw intelligence; as such, disclosure of this information would necessarily disclose an intelligence source (not to mention methods by which that information came to be procured from that source). Bonner's bid for access to the full suite of raw intelligence that Zubaydah has disclosed on the ground that Zubaydah is known generally to have provided intelligence overreaches. Revealing all of the raw intelligence Zubaydah disclosed would necessarily reveal him as its source and as such reveal an intelligence source or method.

In disputing this outcome, Bonner separately argues that permitting the intelligence revealed by Zubaydah to be withheld under Exemption 3 would collapse differences between that exemption and FOIA Exemptions 1, and/or Exemptions 6 and 7. That argument is not a valid basis for reconsideration. And as a legal proposition, it is wrong. There is ample authority that material can be properly withheld pursuant to multiple FOIA exemptions. *See, e.g., Larson v. U.S. Dep't of State*, 565 F.3d 857, 862–63 (D.C. Cir. 2009) (FOIA Exemptions 1 and 3 independently applied to documents at issue); *Gardels v. CIA*, 689 F.2d 1100, 1107 (D.C. Cir. 1982) (noting the "considerable overlap, of course" of material covered by Exemptions 1 and 3 in national security context); *Blackwell v. FBI*, 646 F.3d 37, 40 n.1 (D.C. Cir. 2011) (FBI withholdings permissible under either Exemption 7(C) or 7(E)). Bonner does not cite any statutory provision or case authority to the effect that multiple exemptions cannot apply to particular material. The agencies have established that such is the case as to various materials at issue here. The Court reaffirms the determination in the August 9 Decision, which was made with care and sensitivity to the importance of the issues at hand, that Exemption 3 applies to the withholdings at issue.

### 2. *United States v. Zubaydah* is Inapposite

Bonner argues that *United States v. Zubaydah*, 142 S. Ct. 959 (2022), undermines the August 9 Decision's determination that the Government had not waived Exemption 3's applicability by means of an official disclosure. That precedent, Bonner asserts, establishes that disclosures by former CIA contractors, or similarly situated persons, based on firsthand knowledge are "tantamount to a disclosure from the CIA itself." *Id.* at 970–71. On this basis, Bonner argues, this Court erred in holding that disclosures by former employees and contractors such as CIA contractor James Mitchell and FBI agent Ali Soufan were not official disclosures that waived Exemption 3's applicability. Bonner Mot. at 7–8.

At the threshold, this too is not an appropriate basis for reconsideration. The *Zubaydah* decision was decided March 3, 2022, almost one year before Bonner moved for summary judgment. Bonner could have raised this argument in his briefing on summary judgment, and indeed did so, citing *Zubaydah* to this same effect in his reply in support of summary judgment. *See* Dkt. 63 at 3–4. The Court's rejection of Bonner's reading of *Zubaydah* does not warrant a motion for reconsideration.

In any event, that precedent does not bear Bonner's construction. At issue in *Zubaydah* was a motion to quash a subpoena based on the state-secrets privilege. 142 S. Ct. at 963, 966. The Government took the position that a response to a subpoena from former contractors would confirm or deny whether Poland had cooperated with the CIA, thus harming national security interests. *Id.* at 966. The Supreme Court agreed given the language of the subpoenas and the central role the contractors had played in the events at issue. *Id.* at 971. In those circumstances, the Court found, "confirmation (or denial) of the information Zubaydah [sought] would be tantamount to a disclosure from the CIA itself." *Id.*

*Zubaydah* did not, however, announce a blanket rule to the effect that statements of former contractors, even those with firsthand knowledge of events, invariably constitute official disclosures so as to waive Exemption 3's applicability. Quite the contrary, the Supreme Court did not make any holding as to the official disclosure doctrine, instead adverting to this separate area of doctrine as merely instructive. The Court, in fact, cautioned: "FOIA doctrine is only an (imperfect) analogy, and nothing in this opinion should be taken to suggest that the waiver standards in that area apply directly to the state secrets privilege." *Id.* at 970. The corollary is also true: the Court's commentary in *Zubaydah* cannot be read as binding with respect to FOIA Exemption 3, let alone as adopting a sweeping exception to that exemption for acknowledgments

by government contractors. In any event, in the August 9 Decision, the Court noted that, even assuming *arguendo* that there had been an official disclosure by Soufan or Mitchell, the information withheld was not as specific, nor did it match, "the information presently available to the public *via official disclosure*." August 9 Decision at 22. Bonner's motion for reconsideration cites nothing to disturb this dispositive aspect of the Court's ruling.

\*\*\*

At bottom, Bonner's motion for reconsideration largely repeats arguments made and rejected in the August 9 Decision. The Court thus denies the motion for reconsideration.

## II.     Supplemental Summary Judgment Briefing

The parties have also briefed the CIA's additional claims of exemption under FOIA Exemptions 1 and 3, with respect to material as to which the FBI had claimed exemptions under Exemptions 6, 7(C) and/or 7(E). *See* August 9 Decision at 6–7 & n.3. They have also briefed the 60 redactions pursued by the FBI under Exemptions 6, 7(C) and/or 7(E), which the Court did not reach in its August 9 Decision. The Court again assumes familiarity with that decision, including the facts and governing legal standards recited there. *See* August 9 Decision at 7–10.

### A.     Discussion

For the reasons that follow, the Court grants the Government's summary judgment motion and denies Bonner's cross-motion with respect to the CIA's supplemental claims under Exemption 3, and, finding those exemption claims strong, does not reach the CIA's alternative argument under Exemption 1. The Court also grants the Government's summary judgment motion as to the FBI's 60 claims under Exemptions 6, 7(C) and/or 7(E).

#### 1.     CIA Supplemental Claims of Exemption

The CIA argues that all or some of the information within 711 redactions made by the FBI pursuant to Exemptions 6 and 7 is also exempt under Exemptions 1 and 3. *See* Connolly

8

Decl., Ex. 1 at 9. The Government seeks summary judgment on these on the same grounds that supported entry of summary judgment on its other Exemption 3 claims. *See* Gov. Supp. Br. at 6 ("The Court's careful analysis of Exemption 3 in the August 9 Order applies equally to the CIA's supplemental assertions of the exemption"). Bonner opposes summary judgment on the same bases he unsuccessfully pursued earlier and on reconsideration. *See* Bonner Reply at 1 ("In making additional withholdings under Exemption 3 and in opposing reconsideration, the CIA doubles down on its argument that the NSA authorizes it to withhold all information the Agency obtains from an intelligence source[.]"). The Court's considered assessment is that the CIA's supplemental claims of withholding equally and on the same grounds satisfy Exemption 3 as did the prior withholdings. Accordingly, the Court grants summary judgment in favor of the Government on these claims, and denies Bonner's cross-motion for summary judgment.

### 2. FBI Claims of Exemption

Sixty of the FBI's claims under Exemptions 6 and 7(C) and/or FOIA Exemption 7(E) relate to materials as to which the CIA did not make a claim under Exemption 3. *See* Connolly Decl., Ex 1. It is therefore necessary to reach the FBI's claims.[1]

Exemptions 6 and 7(C) are closely related. Exemption 6 exempts from disclosure information from sources such as personnel or medical files the disclosure of which "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6); *see also U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982). Exemption 7(C) protects from disclosure law enforcement information that, if made public, "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). The two

---

[1] The parties dispute whether Bonner waived certain arguments as to the FBI's withholdings. *See* Gov. Supp. Br. at 9–13; Bonner Reply at 13. The Court here has considered, and treats as preserved, all arguments in both rounds of summary judgment briefing, including arguments the Court did not resolve in the August 9 Decision. *See* August 9 Decision at 6–7 & n.3.

9

exemptions substantially overlap, but Exemption 7(C) does not require as robust a showing as does Exemption 6. Under either, to determine whether personal information is exempt from disclosure, the Court must balance the public need for information against the individual's interest in privacy. *See Wood v. FBI*, 432 F.3d 78, 86 (2d Cir. 2005). Exemption 7(E) is distinct. It protects "records or information compiled for law enforcement purposes" the revelation of which "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E).

Bonner's initial brief on summary judgment stated that he "does not challenge these few redactions [including all those made under Exemption 6 and 7(C)] except to the extent they may withhold previously disclosed information." Dkt. 48 ("Bonner Br.") at 23. Bonner did not make any specific claim to that effect then, or in the recent round of briefing. *See* Bonner Br. at 23; Bonner Reply at 13. Accordingly, the Court grants summary judgment to the Government on the FBI's proposed withholdings under Exemptions 6 and 7(C).

That leaves two disputed redactions at issue—those as to which the FBI invokes solely Exemption 7(E).[2] Connolly Decl., Ex. 1 at 1–9. As to these, Bonner argues that "Exemption 7(E) permits the withholding of law enforcement techniques or procedures only to the extent they are not 'generally known.'" Bonner Br. at 22 (quoting *Iraqi Refugee Assistance Project v.*

---

[2] There are two other redactions that the FBI justifies on the basis of Exemption 7(E), *see* Connolly Decl., Ex. 1 at 3, but because these are independently supported by Exemptions 6 and 7(C), the Court does not have any need to consider whether Exemption 7(E) applies. The Government states that 222 of its redactions rely on Exemption 7(E), but that tabulation appears to encompass—and overwhelmingly consist of—withholdings that overlap with CIA withholdings that the Court has upheld. *See* Gov. Supp. Br. at 11.

*U.S. Dep't of Homeland Sec.*, No. 12 Civ. 3461 (PKC), 2017 WL 1155898, at *6 (S.D.N.Y. Mar. 27, 2017)). He asserts that "the FBI interrogation techniques and information about a plot to use a weapon of mass destruction are discussed in a variety of public sources and cannot properly be redacted." *Id.*

An agency, however, "does not have to release all details concerning law enforcement techniques just because some aspects of them are known to the public. *ACLU Found. v. U.S. Dep't of Justice*, No. 12 Civ. 7412 (WHP), 2014 WL 956303, at *7 (S.D.N.Y. Mar. 11, 2014). Here, the FBI maintains that disclosure of the redacted information would "reveal law enforcement techniques and procedures because it would identify methods used in the collection and analysis of information gleaned through interviews, including the way the FBI strategically collects information and the methodologies employes to analyze it once collected." Gov. Supp. Br. at 12 (citing Dkt. 44 ¶ 61). It asserts that, although the fact that the FBI conducts interviews is publicly known, the "details about how it collects and analyzes information obtained through interviews" and "how it did so in its interviews of Abu Zubaydah" are non-public. *Id.* at 13–14.

Bonner bears the burden of proof on this issue. *See Inner City Press/Cmty. on the Move v. Bd. of Governors of Fed. Reserve Sys.*, 463 F.3d 239, 245 (2d Cir. 2006). However, he has not adduced any evidence supporting that the details of the FBI's interrogation techniques, or the fruits of these techniques or the analyses of them, are generally known to the public. Because the FBI, through its submissions, has plausibly demonstrated "that the information withheld logically falls within the claimed exemption," *Wilner v. Nat'l Sec. Agency*, 592 F.3d 60, 73 (2d Cir. 2009), the Court finds summary judgment warranted in the FBI's favor on this point.

## CONCLUSION

For the foregoing reasons, the Court denies Bonner's motion for reconsideration, grants the Government's motion for summary judgment, and denies Bonner's cross-motion for

11

summary judgment. The Clerk of Court is respectfully directed to terminate all pending motions and close this case.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: January 19, 2024
　　　　New York, New York